IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-113-D

| | |
|---|---|
| SHEKELIA JOYNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Shekelia Joyner ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying the application for a period of disability and disability insurance benefits ("DIB") of her deceased mother, Linda Lee Canady ("claimant"), on the grounds that she was not disabled. Plaintiff was substituted for her mother as the party in interest in the administrative proceedings. Transcript of Proceedings ("Tr.") 10. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 25, 27). Both parties filed memoranda in support of their respective motions. (D.E. 26, 28). The motions were referred pursuant to 28 U.S.C. § 636(b)(1)(B) for issuance of a memorandum and recommendation by a magistrate judge, initially Magistrate Judge William A. Webb (*see* D.E. 29), but later the undersigned after Judge Webb's retirement (*see* Minute Entries dated 8 May 2014). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

**I.     BACKGROUND**

   **A.     Case History**

Claimant filed applications for DIB and Supplemental Security Income ("SSI") benefits on 26 August 2010, alleging the onset of disability on 30 March 2007. Tr. 10. Claimant's SSI claim was approved with a disability onset date of 17 September 2010, the date she suffered a stroke from which she died two days later. Tr., *e.g.*, 10, 74. Claimant's DIB claim was denied initially and upon reconsideration, and plaintiff timely requested a hearing. Tr. 10. On 1 November 2011, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 10, 24-37. Plaintiff testified at the hearing (Tr. 28-35), as did a vocational expert (Tr. 35-37). In a decision dated 22 December 2011, the ALJ found that claimant was not disabled and not entitled to DIB. Tr. 10-19. Claimant timely requested review by the Appeals Council, but the request was denied on 4 March 2013. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Claimant commenced this proceeding for judicial review on 6 May 2013 pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

   **B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart ["listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id*.

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id*.

To establish entitlement to DIB, a claimant must show not only that he is disabled, but also that the disability began before the date of expiration of his disability insured status, known as the "date last insured" ("DLI"). 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

### C. Findings of the ALJ

Claimant was 42 years old on 30 September 2008, claimant's DLI. Tr. 12 ¶ 1; 17 ¶ 7. She had a high school education. Tr. 17 ¶ 8; 229. Plaintiff testified that claimant worked as an aide at a rest home. Tr. 30.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that claimant had not engaged in any substantial gainful activity since her alleged disability onset date of 30 March 2007. Tr. 12 ¶ 2. At step two, the ALJ found that claimant had the following medically determinable impairments that were severe within the meaning of the Regulations: cervical spondylosis with herniated disc and radiculopathy, hypertension, and hypothyroidism. Tr. 12 ¶ 3. At step three, the ALJ found that claimant's impairments, both singly and in combination, did not meet or medically equal any of the listings. Tr. 13 ¶ 4.

The ALJ next determined that claimant had the RFC to perform a limited range of

4

sedentary work.[1] Tr. 13 ¶ 5.  Specifically, he found that she could lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently; stand and walk for 2 hours and sit for 6 hours in an 8-hour work day; stoop, crouch, kneel, and crawl frequently; perform tasks requiring fingering and handling with her right upper extremity frequently; but could not balance or climb, reach, or work at heights or around dangerous machinery.  Tr. 13-14 ¶ 5.

At step four, the ALJ found that claimant had no past relevant work.  Tr. 17 ¶ 6.  At step five, the ALJ accepted testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that claimant could perform, including jobs in the occupations of charge account clerk, food checker, and order clerk.  Tr. 18 ¶ 10.  Accordingly, the ALJ concluded that claimant was not disabled from the alleged onset date of 30 March 2007 through the DLI of 30 September 2008 ("period in question").  Tr. 18 ¶ 11.

### D.     Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.  *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  Substantial evidence is "'such relevant evidence as a reasonable mind might

---

[1] *See* 20 C.F.R. § 404.1567(a) (defining sedentary works as "involv [ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "Sedentary Work." (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 30 May 2014).  "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 404.1567.

5

Case 4:13-cv-00113-D   Document 33   Filed 05/30/14   Page 5 of 15

accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred by improperly evaluating the credibility of allegations by both claimant and plaintiff regarding claimant's impairments, and allegedly not considering certain medical evidence, namely, her stage III chronic kidney disease and the purportedly central role of hypertension in claimant's death. The court will address each issue in turn.

### III. ALJ'S ASSESSMENT OF CLAIMANT'S CREDIBILITY

Plaintiff challenges the ALJ's credibility determination with respect to the claimant's allegations regarding hypertension. The court finds no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing claimant's allegations, the ALJ made the finding at the first step of the credibility assessment that claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 14 ¶ 5. At the second step of the assessment, the ALJ found that claimant's allegations were not fully credible. Tr. 14 ¶ 5. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment."

Tr. 14 ¶ 5. The ALJ also provided specific reasons for his credibility determination. Tr. 14-17 ¶ 5.

In particular, with respect to hypertension, the ALJ found as follows:

> Regarding the claimant's hypertension, the claimant was diagnosed with this condition in August 2000 and treated with Hyzaar. (Exhibit 1F p. 21). She later reported to treating medical providers that she had stopped her medication due to financial constraints. (Exhibits 6E p. 10; 4F p. 6). While not taking her prescribed medication, the claimant sometimes experienced syncopal episodes, dizziness and headaches. (Id.; Exhibits 7E pp. 4-6; 10F pp. 30, 51, 72). She reported to the State agency that she experienced dizziness which affected her ability to cook and perform household chores. (Exhibit 7E p. 5). On April 28, 2007, the claimant was admitted to the hospital for a two-day inpatient stay after complaining of chest pain and right arm pain. A chest CT showed no evidence of aortic or carotid dissection or pulmonary embolism. The claimant's blood pressure was measured at 201/118. (Exhibit 5F p. 11). The claimant was discharged without any change to her medication or treatment.
>
> Similarly, on September 4, 2008 and November 18, 2008, the claimant was admitted to the hospital with a headache and elevated blood pressure measured at 241/142 and 208/121 respectively. (Exhibits 7F p. 5; 8F p. 71). Her blood pressure was stabilized with intravenous fluids and oral medications. A head CT scan and CTA were unremarkable. (Exhibit 8F p. 71). The claimant was diagnosed with stage III chronic kidney disease and instructed to vigilantly monitor her blood pressure. (Id.). *Overall, the medical evidence of record shows that the claimant's hypertension and corresponding symptoms responded to treatment*.

Tr. 16 ¶ 5 (emphasis added).

The ALJ further found:

> Additionally, clinic and emergency department records document the claimant's history of uncontrolled high blood pressure. However, the claimant's physical examination results do not support the degree of limitation alleged.

Tr. 17 ¶ 5.

Plaintiff challenges the ALJ's credibility assessment on the grounds that the ALJ erred in finding, as quoted above, that "claimant's hypertension and corresponding symptoms responded

to treatment." Tr. 16 ¶ 5.  Plaintiff argues, instead, that claimant's hypertension was never controlled.

Review of the record shows, however, that substantial evidence supports the ALJ's finding.  This evidence includes medical records from April 2007 to September 2008, which fall within the period in question.  Tr. 397, 504, 568, 573, 589, 593-94, 600-01, 610-11, 615, 617, 621, 624, 632, 635; *see* Comm'r's Mem. 9 (describing records cited).

While not fully crediting claimant's allegations, it is apparent that the ALJ did not reject them entirely, as he states.  After all, he found her capable of work at only the sedentary level and, even then, subject to various limitations.  Tr. 13-14 ¶ 5.

The court concludes that, as required, the ALJ gave specific reasons for his determination of claimant's credibility that are supported by substantial evidence.  The ALJ's analysis of claimant's credibility otherwise conforms to applicable law and is supported by substantial evidence. The court should accordingly reject plaintiff's challenge to this portion of the ALJ's decision.

## IV. ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILTY

Plaintiff testified at the hearing that claimant's impairments prevented her from working and that claimant had limited access to treatment for them.  Tr. 28-34.  The ALJ summarized plaintiff's testimony as follows:

> At the hearing, the claimant's daughter testified that the claimant's back, neck, shoulder, and arm pain prevented her from working. (Hearing Testimony). She said that her mother could not afford medical treatment or medication so she sought treatment in the emergency room.

Tr. 16 ¶ 5.

The ALJ then found that "the reports of Ms. Joyner during the hearing do not establish

9

that the claimant is disabled." Tr. 17 ¶ 5. The ALJ cited three reasons for discrediting her reports:

> [1] Ms. Joyner is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms or of the frequency or intensity of unusual moods or mannerisms. [2] Moreover, by virtue of her parent/child relationship with the claimant, Ms. Joyner cannot be considered a disinterested third party whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations alleged by the claimant. [3] Most importantly, significant weight cannot be given to the statements of Ms. Joyner because they, like the claimant's allegations, are not fully consistent with the preponderance of the opinions and observations by medical doctors in this case.

Tr. 17 ¶ 5.

Plaintiff does not challenge the first two reasons cited by the ALJ—plaintiff's lack of medical expertise and interested perspective as a child of claimant. These reasons alone provide significant support for the ALJ's credibility determination regarding plaintiff.

Plaintiff does, though, challenge the third reason—inconsistency with the medical evidence. Plaintiff argues initially that the ALJ states this reason only in conclusory fashion without the requisite specificity. *See Hammond v. Heckler*, 765 F.2d 424, 425 (4th Cir. 1985).

The ALJ's decision must, however, be read as a whole. *Forbes v. Colvin*, No. 4:12-CV-211-FL, 2013 WL 4759086, at *8 (E.D.N.C. 23 July 2013) (mag. judge's mem. and recommendation) (collecting cases), *adopted*, 2013 WL 4759086, at *3 (4 Sept. 2013). The ALJ's assessment of plaintiff's credibility comes after his comprehensive discussion of the medical evidence during the period in question. It is apparent that the ALJ's reference to the inconsistency of plaintiff's testimony "with the preponderance of the opinions and observations by medical doctors" alludes to the preceding analysis of the medical evidence. Tr. 17 ¶ 5. Thus, the reason given by the ALJ for his assessment of plaintiff's credibility is, indeed, very detailed

and not conclusory.

Plaintiff also points to her testimony that claimant died from a stroke that resulted from her hypertension (Tr. 28-29) and medical evidence purportedly supporting this conclusion (Tr. 542-43, 671-85, 689-99, 730). She argues that the ALJ was required to consider the role of hypertension in claimant's death, citing *Bird v. Comm'r of Social Security*, 699 F.3d 337, 341 (4th Cir. 2012).[2]

But the claimant died on 19 September 2010, almost two years after the DLI, 30 September 2008. The record does not demonstrate that the apparent central role of claimant's hypertension in her death would shed light on the severity of that impairment two to three-and-a-half years earlier, that is, during the period in question. That is particularly true given the considerable medical and other evidence from the period in question relating to her hypertension. *Cf. Bird*, 699 F.3d at 340, 341 (finding nonconsideration of post-DLI evidence was error where, *e.g.*, there were no medical records dating before the DLI). Moreover, in at least one medical record from the period in question discussed by the ALJ in his decision, claimant reported that she had previously suffered a stroke. *See* Tr. 13 (citing note on 22 May 2007 visit to Barbara E. Lazio, M.D. (Tr. 413-14)).[3] Thus, the ALJ was already familiar with the notion that claimant's condition was such that it could cause a stroke.

Plaintiff also cites to her testimony that her mother's blood pressure was worse when she was in pain:

---

[2] The ALJ was manifestly aware of the potential appropriateness of considering post-DLI evidence in assessing impairments prior to the DLI because he did so with respect to plaintiff's cervical spine impairments. Tr. 15 ¶ 5 ("Although the imaging study was performed after the period in question, the undersigned has taken it into consideration due to the close proximity to the claimant's [DLI] and the claimant's alleged limited opportunity to receive medical care due to financial restraints.").

[3] Other records before the ALJ referencing claimant's self-reports of a prior stroke include those at Tr. 321, 437-38, and 546.

> But of course when you're in pain, your blood pressure tends to be higher than it is when you're just fine. So, that also played a role to her deciding on if she would be able to work or not.

Tr. 31. For support, plaintiff cites to a single medical record (Tr. 442-49).

As the ALJ noted, plaintiff does not have the medical training to offer expert medical opinions such as this—again, a finding plaintiff herself does not challenge. The one medical record plaintiff cites, which relates to an emergency room visit, was on 28 August 2009, almost a year after the DLI. Moreover, the examining physician identified pain as only a possible cause of claimant's high blood pressure: "She also has very high blood pressure, *possibly* secondary to pain." Tr. 445 (emphasis added).

Plaintiff next notes her testimony that her mother often went without her blood pressure medication because she could not afford it, even with financial help from family members. Tr. 32-33; *see also* Tr. 397, 529, 545-47 (all medical records cited by plaintiff in support). Plaintiff then appears to argue that the ALJ somehow penalized claimant for not obtaining treatment more regularly, as prohibited by *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

In fact, though, the ALJ made no finding that lapses in claimant's treatment indicated her symptoms were not as severe as she alleged. Nor did he specifically reject plaintiff's testimony regarding claimant's limited ability to pay for treatment. In his discussion of the medical evidence regarding plaintiff's hypertension, the ALJ acknowledged that she "reported to treating medical providers that she had stopped her medication due to financial constraints. (Exhibits 6E p. 10; 4F p. 6)." Tr. 16 ¶ 5. Further, in his discussion of claimant's orthopedic impairments, the ALJ gave consideration to an MRI taken in November 2008, after the DLI, in part, because of "the claimant's alleged limited opportunity to receive medical care due to financial restraints." Tr. 15 ¶ 5.

To the extent plaintiff testified that claimant was disabled, that opinion is not, of course, binding on the Commissioner or entitled to special significance. *See* 20 C.F.R. § 404.1527(e)(1), (3); Soc. Sec. R. 96–5p, 1996 WL 374183, at *3 (2 July 1996). The issue of whether claimant is disabled is one reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1), (3); Soc. Sec. R. 96–5p, 1996 WL 374183, at *3.

As with claimant's allegations, the ALJ clearly did not reject plaintiff's testimony entirely. Again, he found claimant capable of only a limited range of sedentary work.

The court concludes that the ALJ's assessment of plaintiff's credibility is based on the proper legal standards and supported by substantial evidence. Plaintiff's challenge to this aspect of the ALJ's decision should accordingly be rejected.

## V. ALJ'S EVALUATION OF MEDICAL EVIDENCE

### A. ALJ's Purported Nonconsideration of Claimant's Chronic Kidney Disease

Claimant was diagnosed in September 2008 with Stage III chronic kidney disease. Tr. 504. Plaintiff argues, in effect, that this diagnosis shows that claimant's hypertension was disabling and that the ALJ erred by not considering the diagnosis.

In fact, though, the ALJ did consider the diagnosis: "The claimant was diagnosed with Stage III chronic kidney disease . . . ." Tr. 16 ¶ 5. Moreover, a mere diagnosis is not sufficient to show that the condition is disabling; in addition, "[t]here must also be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Plaintiff further argues that the ALJ erroneously found that claimant's hypertension "was not so severe that it resulted in end organ damage," apparently alluding to claimant's chronic kidney disease. (Pl.'s Mem. 9). The ALJ made no such finding. Instead, at step three of the sequential analysis, he determined that "the evidence of record does not indicate that the

13

Case 4:13-cv-00113-D   Document 33   Filed 05/30/14   Page 13 of 15

claimant's impairment resulted from consequences of heart disease or other end organ damage as described in introductory section 4.01" of the listings. Tr. 13 ¶ 4, *see* Listing 4.00A1b.[4] On this basis, he ruled that claimant's hypertension did not meet or medically equal the requirements of Listings 4.01 to 4.12. Tr. 13 ¶ 4. Thus, the ALJ did not opine on whether claimant's hypertension was sufficiently severe to cause end organ damage. Notably, plaintiff does not challenge the ALJ's determination that claimant did not meet or medically equal any cardiovascular system listings.

Plaintiff's arguments relating to claimant's chronic kidney disease are therefore meritless. They should accordingly be rejected.

### B. ALJ's Purported Nonconsideration of Role of Claimant's Hypertension in Her Death

While plaintiff raises the issue of the ALJ's nonconsideration of claimant's hypertension as the cause of her death in the context of his determination of plaintiff's credibility, plaintiff appears to argue that the ALJ erred by not considering this evidence otherwise in his decision. While it is true that the ALJ did not include claimant's death and the role of hypertension in it in his discussion of the reasons for his credibility determination, the record does not rule out the possibility that he did consider it in other portions of his analysis. After all, an ALJ is not required to discuss every piece of evidence. *See, e.g., Doyle v. Colvin*, No. 7:12-CV-326-FL, 2014 WL 269027, at *10 (E.D.N.C. 2 Jan. 2014) (mag. judge's mem. and recommendation), *adopted*, 2014 WL 269027, at *1 (23 Jan. 2014).

There is no error, though, to the extent that the ALJ did not otherwise consider this evidence. As previously discussed, the record does not show that this evidence, postdating the

---

[4] The specific provision to which the ALJ alludes appears to be Listing 4.00A1, which, in part, identifies the four consequences of heart disease from which cardiovascular impairments result, *see id.* 4.00A1b(i)-(iv).

14

period in question by years, would elucidate the severity of claimant's hypertension during that period. This contention by plaintiff therefore also fails.

## VI. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 27) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 25) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 13 June 2014 to file written objections. Failure to timely file written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 30th day of May 2014.

_____
James E. Gates
United States Magistrate Judge